IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JOSIE STEVENS, | ) |
| | ) |
| Plaintiff, | ) Case No. 12-cv-00406 |
| | ) |
| v. | ) |
| | ) |
| CAROLYN W. COLVIN[1], | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

OPINION AND ORDER

This matter is before the court on the petition for review of the decision of the Commissioner of Social Security filed by the plaintiff, Josie Stevens, on October 9, 2012. For the following reasons, the decision of the Commissioner is **AFFIRMED**.

*Background*

The plaintiff, Josie Stevens, filed an application for Disability Insurance Benefits on September 25, 2010, alleging disability due to back, neck, and leg impairments. (Tr. 171-184, 219) Stevens' application initially was denied on December 16, 2010. (Tr. 82) Stevens' request for reconsideration was denied on January 31, 2011. (Tr. 82) She then filed a request for a hearing on February 8, 2011. (Tr. 125-126) On November 15, 2011, she testified at an administrative hearing via video conferencing before Administrative Law Judge (ALJ) Patrick

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically substituted for Michael J. Astrue as the named Defendant.

1

Nagle. (Tr. 32-80) Vocational Expert (VE) Robert Barkhaus also appeared and testified. (Tr. 32-80) On December 29, 2011, the ALJ issued a decision denying benefits. (Tr. 22-31) Stevens filed a request for review of the hearing decision with the Appeals Council, but her request was denied on August 6, 2010, making the ALJ's determination the final decision of the Commissioner. (Tr. 1-4)

At step one of the five step sequential analysis used to determine whether a claimant is disabled, the ALJ determined that Stevens had not engaged in substantial gainful activity since August 18, 2010, her amended alleged onset date. (Tr. 24) He then determined that Stevens had the following severe impairments: spinal degenerative disc disease causing neck, back, and leg pain, and obesity. (Tr. 24) At step three, the ALJ determined that Stevens' impairments or combination of impairments did not meet or medically equal one of the listed impairments. (Tr. 25)

> The ALJ then assessed Stevens' residual functional capacity (RFC) as follows: the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she needs a sit/stand option, where she can alternate sitting or standing at will but not be off task more than 10% of the workday. She is able to lift, carry, push, and pull ten pounds at most. In an eight-hour period, she is able to sit for a total of up to six hours and stand/walk for a total of at least two hours. In addition, the claimant is not able to crawl, kneel, or climb ladders, ropes, or scaffolds at all. She can only occasionally balance, stoop, crouch, and climb ramps and stairs. (Tr. 25)

The ALJ explained that Stevens had filed for disability insurance benefits in the past and that her request was denied on August 17, 2010. (Tr. 25) Stevens underwent three back surgeries in 1998 and 1999 and testified that she continued to suffer from constant pain of an aching nature in her neck and back, spinal pain that radiated into her arms and legs, and sharp pain and swelling in her left leg at all times. (Tr. 26) She further reported that her legs became

2

numb and that she had difficulty moving her neck so she could not operate a vehicle. (Tr. 26) Stevens reported that bending and repetitive activities worsened her pain, that she was afraid she would fall down, that she was stiff when she woke up in the morning, that standing increased the swelling in her left leg, and that she had to prop her left leg up when it swelled. (Tr. 26) Stevens stated that she had difficulty getting up from a stooped position, could load only four or five things in the dishwasher at a time, could not pick up laundry or a case of soda, was able to walk only a short distance, could stand for ten or fifteen minutes at a time, and was able to sit for only thirty minutes at a time. (Tr. 26) Stevens reported taking Tramadol and Flexeril and testified that she used to take Vicodin and anti-inflammatory medications. (Tr. 26)

Stevens further reported that she had to sit down to put her shoes and socks on, that she did not sleep for more than one hour at a time due to pain, that she had difficulty writing a lot and gripping a knife, that she dropped her coffee regularly, that she could not climb more than ten or twelve steps and had to use a handrail and put both feet on each step, that she used a chair in the shower, that she could not open a jar due to lack of strength in her fingers, that her middle finger on her right hand was numb, that her medications made her drowsy, and that looking up, down, or to the sides increased her pain. (Tr. 26)

Stevens told the ALJ that she did not have money or insurance to get an MRI. (Tr. 26) She had to lean forward and put her arms on the table or lean to one side while seated. (Tr. 26) She got headaches when she read, napped for forty-five to sixty minutes during the day, and held onto the cart when shopping for groceries. (Tr. 26) She also reported that she could not get out of bed the day after her functional capacity evaluation in October 2011 and that it took her almost a week to get back to her usual state after the evaluation. (Tr. 26) Stevens' brother,

William Harter, testified that Stevens laid down or sat after going to the store and that he carried groceries for her, swept, and did the dishes when he lived with her. (Tr. 26)

The ALJ stated that after considering all of the evidence, he found Stevens' "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with her residual functional capacity." (Tr. 26)

The ALJ went on to explain that his RFC assessment was more restrictive than the State Agency opinion and the opinion of Dr. Gadiraju, a physician who examined Stevens at the request of the Social Security Administration. (Tr. 27) The ALJ explained that although David Anzelmo, the physical therapist who conducted the functional capacity evaluation, indicated that Stevens only was able to sit occasionally, the ALJ did not find that this opinion alone was enough to find that Stevens was more limited than stated in the RFC assessment. The ALJ explained that no other medical opinion of record supported such a finding and that Anzelmo was not a licensed physician. (Tr. 27) Additionally, his objective findings did not support his opinion that Stevens could sit only occasionally. (Tr. 27) His examination report stated that Stevens' reflexes were symmetric and intact and that her muscle strength was within normal limits, except for a slight reduction in her lower left extremity. (Tr. 27) Anzelmo also noted that Stevens had a mild deficit in grip strength in her left hand and a moderate to severe deficit in grip strength in her right hand and that this was not consistent with the other medical evidence of record, including the report from Dr. Gairaju and the progress notes from Stevens' treating physician, Dr. Wyatt Weaver. (Tr. 27)

4

The ALJ next explained that the functional capacity evaluation, Dr. Weaver's records, and Dr. Gadiraju's report reflected that Stevens had a decreased range of motion in her cervical and lumbar spine, knees, and hips; that she was tender over her lumbar spine and sacroiliac joints; and that she was mildly obese. (Tr. 27) The ALJ noted that Dr. Weaver only rarely indicated that Stevens had positive SLR and decreased reflexes. (Tr. 27) Her muscle strength essentially was normal, and there was no evidence of any muscle atrophy, which might be expected if Stevens was as inactive as she alleged. (Tr. 27) The ALJ concluded that the objective medical evidence did not support a more restrictive RFC or fully corroborate Stevens' testimony. (Tr. 27)

The ALJ went on to explain that Stevens admitted that she did not use a cane and that there was no evidence that Dr. Weaver suggested that Stevens should use any sort of assistive device on a regular basis. (Tr. 27) The ALJ also pointed out that although Stevens testified that she suffered constant pain, she told Dr. Weaver that her pain came and went. (Tr. 27) Stevens also admitted at the hearing that she was able to care for her personal needs although she had to use a chair in the shower. (Tr. 27) She could dust, cook minor things on the stove, use a microwave, watch television, talk on the phone, fold laundry, and check e-mail. (Tr. 27) The ALJ noted that there was no evidence of record that Stevens had been referred to an orthopedic specialist in 2010 or 2011 or that she had any back surgeries since the late 1990s. (Tr. 27) The ALJ concluded that Stevens' treatment for her spinal problems had been largely conservative since her onset date. (Tr. 27-28) Together, the medical evidence and opinions did not support a more restrictive RFC and did not fully corroborate Stevens' allegations. (Tr. 28)

At step four of the sequential analysis, the ALJ concluded that in light of her RFC

Stevens was capable of performing some of her past work. (Tr. 28) For this reason, Stevens was not disabled as defined by the Social Security Act. (Tr. 28)

*Discussion*

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence. **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Kastner v. Astrue***, 697 F.3d 642, 646 (7th Cir. 2012); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852, (1972)(*quoting* ***Consolidated Edison Company v. NRLB***, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* ***Shideler v. Astrue,*** 688 F.3d 306, 310 (7th Cir. 2012)***; Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law. ***Roddy v. Astrue,*** 705 F.3d 631, 636 (7th Cir. 2013)***; Rice v. Barnhart***, 384 F.3d 363, 368-369 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is

unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> **42 U.S.C. § 423(d)(1)(A)**.

The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520.** The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 404.1520(b).** If she is, the claimant is not disabled and the evaluation process is over. If she is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of her past work. If, at this fourth step, the claimant can perform her past relevant work, she will be found not disabled. **20 C.F.R. § 404.1520(e).** However, if the claimant shows that her impairment is so severe that she is unable to engage in her past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of her age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).**

Stevens challenges the ALJ's decision on two grounds. First, she argues that his RFC assessment was not supported by substantial evidence. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what he must articulate in his written decision. *See* **Morphew v. Apfel**, 2000 WL 682661 at *3 ("There is a distinction here [in SSR 96-8p] between what the ALJ must consider and what the ALJ must articulate in the written opinion."); **Lawson v. Apfel**, 2000 WL 683256, *2-4 (S.D.Ind. May 25, 2000) (ALJ who restricted the claimant to medium work satisfied the requirements of SSR 96-8p)("[SSR 96-8p] does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Rather, an ALJ must explain how the evidence supports his or her conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work activities.").

Stevens complains that the ALJ failed to account for her severe pain, need to lay down and elevate her legs, and deficiencies in concentration and focus in his RFC assessment. To

8

begin, Stevens did not raise any mental impairments at the administrative level, and the record is devoid of any evidence that she sought or received any treatment for mental health issues. Moreover, Stevens did not allege any problems with concentration or focus at the hearing before the ALJ. Dr. Gadiraju noted that she had normal concentration and social interaction, and she abandoned this argument in her reply brief. *See Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011) (explaining that arguments not raised in response brief are waived); *Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (same); *Laborers' Intern. Union of North America v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (same); *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998) (explaining that argument not raised in initial brief is considered waived). For these reasons, the court does not find that the ALJ erred by failing to take any mental limitations into account.

Stevens testified that she had difficulty performing some tasks that required stooping and needed to elevate her legs. However, she has not identified any medical evidence to support these restrictions. No treating, examining, or reviewing medical source stated that Stevens was unable to stoop or needed to elevate her legs, nor do the records reflect that she ever reported the need to elevate her legs to her doctors. The only evidence Stevens points to was her testimony that she was most comfortable laying down with her legs elevated. However, this is not equivalent to saying that it was medically necessary for Stevens to do so.

Stevens similarly failed to show that she was unable to stoop. In support of her argument, Stevens pointed to several portions of her testimony where she stated that she struggled with or could not perform certain activities that required stooping. However, she did not testify, nor does the testimony she referred to reflect, that she had a complete inability to

9

stoop.  Rather, the record reflects that her pain was inconsistent, which suggests that her inability to stoop also might have been intermittent.  Moreover, none of her physicians noted a complete inability to stoop.  In her reply brief, Stevens stated that her MRIs supported her complaints of pain because they revealed disc disease, tears, spinal stenosis, and disc protrusion.  Although she has identified some objective evidence that may support such a limitation, because she neither testified nor did any of her doctors opine that she had a complete inability to stoop, the ALJ did not err in determining that Stevens occasionally could stoop.

Stevens also challenges the ALJ's credibility determination.  This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position to observe a witness" entitles his opinion to great deference. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006). However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).  Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can

reasonably be accepted as consistent with the objective medical evidence and other evidence."

**20 C.F.R. §404.1529(a);** *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir.2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." **20 C.F.R. §404.1529**(c); *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1. *See also* **Indoranto v. Barnhart**, 374 F.3d 470, 474 (7th Cir. 2004); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information

and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994); *see also* ***Zurawski v. Halter***, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, he must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2. *See* ***Zurawski***, 245 F.3d at 887; ***Diaz v. Chater***, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). He must "build an accurate and logical bridge from the evidence to [his] conclusion." ***Zurawski***, 245 F.3d at 887 (*quoting* ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the ALJ is rejecting. *See* ***Zurawski***, 245 F.3d at 888 (*quoting* ***Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be *examined*, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

Stevens first criticizes the ALJ for using boilerplate language. However, the use of

boilerplate language is not grounds for remand unless it is not supported by any further explanation. Here, the ALJ proceeded to provide further support for his opinion. He explained that Stevens had mild examination results, was able to engage in many activities, reported her pain to be intermittent, and none of her doctors' opinions found Stevens to be as limited as she alleged.

Stevens argues that the medical records supported her complaints of pain by pointing to a diagram describing the location and severity of her pain. However, the Commissioner points out that the diagram was constructed from Stevens' subjective complaints. Stevens also pointed to a doctor's note that recorded that she had good days and bad days and argued that her treating physician noted ongoing pain regularly in his notes. Stevens has not shown how this information conflicts with the ALJ's assessment. The ALJ referred to these same notes to show that Stevens' pain was inconsistent as they reveal that her pain came and went.

Stevens did not refer to her MRI to show that objective medical evidence supported her complaints of pain until she filed her reply brief. *See Wright*, 139 F.3d at 553 (explaining that argument not raised in initial brief is considered waived). Regardless, the ALJ's credibility determination will not be overturned unless it is patently wrong. The record reflects that the ALJ considered the MRIs. Despite the MRI findings, this does not change the substantial evidence on which the ALJ relied to form his credibility determination. Stevens' physicians, who saw the MRI findings, did not state that she had any greater restrictions than the ALJ determined, and despite the MRI findings, Stevens' complaints of pain remained intermittent. The ALJ satisfied his burden by pointing to substantial evidence to support his finding.

Overall, the ALJ supported his decision with substantial evidence and Stevens has failed

13

to show that the ALJ erred in supporting his decision. For these reasons, the decision of the Commissioner is **AFFIRMED.**

ENTERED this 3rd day of January, 2014

/s/ Andrew P. Rodovich
United States Magistrate Judge